ELECTRONICALLY
FILED
Jun 15 2017
U.S. DISTRICT COURT
Northern District of WV

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# AT WHEELING

| | |
|---|---|
| CITY OF NEW MARTINSVILLE, WEST VIRGINIA<br>195 Main Street<br>New Martinsville, West Virginia 26155<br><br>    Plaintiff,<br><br>Vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY<br>175 Berkley Street<br>Boston, Massuchsetts 02117<br><br>    Defendant. | CASE NO.   5:17-CV-87<br><br>JUDGE   Stamp<br><br><br><br><br>COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT<br><br>(JURY DEMAND ENDORSED HEREON) |

Plaintiff, The City of New Martinsville, West Virginia, as owner-operator of the New Martinsville Hydroelectric Project ("Plaintiff" or "New Martinsville"), through its undersigned counsel, states the following allegations and causes of action against Defendant Liberty Mutual Insurance Company ("Defendant" or "Liberty"):

## NATURE OF THE ACTION

1. This is a civil action brought by New Martinsville against Liberty arising from Liberty's failure to pay for a loss to New Martinsville's insured property under an "all risks" property insurance policy issued by Liberty.

2. Pursuant to the insurance policy at issue (as more fully described below), Liberty agreed to insure New Martinsville against "all risks of direct physical loss or damage" to covered property unless otherwise excluded by the policy's provisions.

3. Despite undertaking this contractual duty, Liberty has failed to honor its obligations with respect to a loss occurring at the insured hydroelectric plant owned and operated by New Martinsville. As a result, New Martinsville has sustained damages in excess of $20 million as well as interest on such amounts. New Martinsville seeks recovery from Liberty for these amounts and asserts claims against Liberty for breach of contract and declaratory judgment.

**PARTIES, JURISDICTION AND VENUE**

4. New Martinsville is a body corporate and politic organized and existing under the laws of the State of West Virginia and is located in Wetzel County, West Virginia.

5. Upon information and belief, Liberty is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02117. Liberty's agent for service of process in West Virginia is Corporation Service Company, 209 W. Washington Street, Charleston, West Virginia 25302.

6. Upon information and belief, Liberty conducts substantial business within the State of West Virginia and is licensed to conduct the business of insurance in West Virginia by the Insurance Commissioner of West Virginia.

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties to this action and, as alleged below, the amount in controversy exceeds $75,000 exclusive of costs and interest.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Additionally, this case or controversy involves an insurance policy issued to a policyholder in this judicial district, sufficient to permit a declaratory judgment under 28 U.S.C. § 2201.

## BACKGROUND

9. New Martinsville owns, operates and maintains a hydroelectric generating facility located at the U.S. Army Corps of Engineers' Hannibal Locks and Dam on the Ohio River, more commonly known as the New Martinsville Hydroelectric Project (the "Project"). The Project is operated pursuant to a license authorized by the Federal Energy Regulatory Commission ("FERC").

10. All activities for the Project, including the intake channel, powerhouse, and hydroelectric turbine units are located on the West Virginia side of the Ohio River in Wetzel County, West Virginia.

11. At all times relevant hereto, the Project operated two hydroelectric Kaplan horizontal bulb turbines manufactured by Fuji Electric. The two turbines are designated as Unit 1 and Unit 2.

12. Both Unit 1 and Unit 2 contain a runner connected to the generator by a horizontal shaft. The runner is connected to the shaft by a series of bolt and nut assemblies that connect the runner and shaft at a connection point known as the shaft flange.

13. Both Unit 1 and Unit 2 were designed and engineered to be operated in a water environment and subject to cyclical stresses. Importantly, the bolt/nut assemblies connecting the runner to the shaft, and the shaft itself, were designed to have a virtually infinite life absent some unexpected event affecting these components.

14. Unit 1 and Unit 2 began operating in August 1988 and July 1988, respectively. Until July 2014, both Unit 1 and Unit 2 were in operation without major incident or prolonged shutdown.

15. On July 10, 2014, the Project's operators heard an extremely loud metal fracturing sound followed almost immediately by excessive vibration levels emanating from Unit 1. Unit 1 was then manually shut down by the Project operator.

16. Subsequently, Unit 1 was "de-watered" to allow access to the unit. It was at this time that New Martinsville learned that several of the bolts and nuts connecting the runner hub to the turbine shaft were either broken or disengaged.

17. Subsequent analysis revealed cracks and other damage in several areas of the shaft including, but not necessarily limited to: (1) the failed nut/bolt assemblies; (2) surrounding damage to the ligaments of the bolt holes bored into the shaft; (3) damage to the bolt holes themselves; (4) a crack in the shoulder of the flange face; and (5) several cracks in the shaft radius.

18. Repairs to Unit 1 were then undertaken at substantial expense. Such repairs entailed, among other things, retention of mechanical contractors, removal of the damaged shaft, purchase and installation of a new shaft, and other associated costs such as storage, equipment, materials, and labor.

19. As a result of the July 10, 2014, incident, Unit 1 was completely shut down and non-operational for over two-and-a-half years while repairs were ongoing. New Martinsville was therefore unable to generate and sell electricity that otherwise would have been produced by Unit 1. New Martinsville therefore suffered substantial business interruption-related revenue losses.

## THE POLICY

20. New Martinsville's Project is the Named Insured on an "all risks" property insurance policy (Policy No. 4N650168077) issued by Liberty with a policy period of April 1, 2014, to April 1, 2015 (the "Policy"). A true and accurate copy of the Policy is attached as Exhibit A. The total Limit of Liability under the Policy is $113,776,918.

21. The Policy required payment of an annual premium of $142,800. All premiums and other amounts due under the Policy have been paid in full.

22. The Policy provides that it will cover "the property insured hereunder *against all risks of direct physical loss or damage* occurring during the policy period, except as hereinafter excluded or limited." (Emphasis added.) The Policy covers the damages suffered by the Project's property as described above as well as the costs associated with such damage.

23. The Policy also provides Business Interruption coverage to New Martinsville for "covered loss directly resulting from necessary interruption of business caused by direct physical loss or damage to property, and arising from a peril covered hereunder . . . ." Further, the Policy "also insures such expenses as are necessarily incurred for the purpose of reducing covered loss under the policy . . . ." New Martinsville has sustained losses covered by these provisions of the Policy, including losses arising directly from Unit 1's shutdown and its resultant inability to generate electricity for over two (2) years following the July 10, 2014, incident.

24. The Policy also provides various other coverages for additional losses sustained by New Martinsville as a result of the July 10, 2014, incident.

25. New Martinsville promptly provided Liberty with notice of the July 10, 2014, incident. New Martinsville subsequently provided prompt notice of the damage sustained to the

Project as described herein. In fact, Liberty actively participated in the investigation and assessment of the July 10, 2014, incident and associated damage.

26. In connection with the claim submitted by New Martinsville, Liberty retained York Risk Services, Inc. ("York") to investigate and adjust the loss. York then retained several consultants to investigate the cause of the damage sustained by the Project. New Martinsville has at all times reasonably cooperated with York's investigation. Liberty, on its own or through York, visited the Project on multiple occasions during 2014, 2015, and 2016 to investigate New Martinsville's claim under the Policy.

27. Despite spending several years investigating the July 10, 2014, incident and New Martinsville's claim, Liberty has refused to accept the claim and has, as a practical matter, denied coverage for the losses sustained by Unit 1 and for any related losses. Upon information and belief, Liberty's *de facto* denial is based upon its supposition that New Martinsville's losses were caused by one or more "Excluded Perils" identified in Section 6 of the Policy.

28. Because the Policy insures the Project against "all risks" unless otherwise excluded, New Martinsville is not required to prove or demonstrate the specific cause of its loss. Instead, to the extent Liberty intends to rely upon an "Excluded Peril" set forth in Section 6 of the Policy, Liberty has the burden of proving that the specific "Excluded Peril" was the sole efficient proximate cause of New Martinsville's loss. Liberty has failed to satisfy this burden under the relevant standards of proof and will be unable to do so at trial.

29. Notwithstanding the fact that the loss falls within the coverage of the Policy and is not excluded, Liberty has failed and refused to compensate New Martinsville for the monetary losses incurred as a result of the damages sustained by Unit 1 and the resulting prolonged shutdown of that unit.

## COUNT 1 – BREACH OF CONTRACT

30. New Martinsville incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

31. The Policy constitutes a contract for insurance between New Martinsville and Liberty.

32. New Martinsville has paid all premiums and other amounts due under the Policy and has otherwise substantially performed all of its obligations under the Policy to the extent compliance with such obligations has not been waived by Liberty, or to the extent Liberty would be estopped from demanding compliance with such obligations or the performance of such obligations would be futile.

33. The Policy obligates Liberty to pay New Martinsville on claims submitted for covered losses, such as the losses described herein.

34. Liberty has failed to acknowledge and honor its full obligations under the Policy.

35. Liberty's failure to acknowledge and honor its full obligations to New Martinsville under the Policy constitutes a breach of contract which has caused harm to New Martinsville in an amount to be proven at trial, but believed to be in excess of $20,000,000.

## COUNT 2 – DECLARATORY JUDGMENT

36. New Martinsville incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

37. New Martinsville seeks a judicial determination as to its rights and Liberty's duties under the Policy and/or any other policies issued by Liberty which may cover the losses described herein.

38. An actual and justiciable controversy exists between New Martinsville and Liberty with respect to Liberty's obligations under the Policy relating to the losses sustained to the Project.

39. The issuance of declaratory relief by this Court will terminate the existing controversy between Liberty and New Martinsville as to the meaning and terms of the Policy.

40. New Martinsville is entitled to a declaration by this Court of its rights, and Liberty's obligations, under the Policy relating to the losses described herein.

**WHEREFORE**, New Martinsville prays for judgment against Liberty as follows:

a. As to Count 1, a monetary judgment against Liberty in an amount to be proven at trial, but believed to be in excess of $20,000,000 plus pre- and post-judgment interest on such amounts;

b. As to Count 2, a declaratory judgment declaring the parties' respective rights and obligations under the Policy, and any other applicable policies issued by Liberty, with respect to the losses associated with the damage to Unit 1;

c. As to all counts, attorneys' fees, costs of this action, and any further relief the Court deems just and equitable.

*/s/ Carolyn G. Flannery*
Carolyn G. Flannery, Esq (W.Va. Bar No. 6478)
cflannery@snyder-hassig.com
Logan Hassig, Esq. (W.Va. Bar No. 1632)
lhassig@snyder-hassig.com
SNYDER & HASSIG
PO Box 189
New Martinsville, West Virginia 26155
Telephone: (304) 455-2180
Facsimile: (304) 455-1514

Of Counsel:

BROUSE McDOWELL

Amanda M. Leffler, Esq. (Ohio Bar No. 0075467)
aleffler@brouse.com
P. Wesley Lambert, Esq. (Ohio Bar No. 0076961)
wlambert@brouse.com
388 South Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601

*Attorneys for the City of New Martinsville*

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable by the maximum amount of jurors authorized by law.

/s/ *Carolyn G. Flannery*
One of the attorneys for Plaintiff